**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

ANTHONY BERNARD SMITH, JR.,
*Petitioner-Appellant*,

v.

RON DAVIS,
*Respondent-Appellee.*

No. 17-15874

D.C. No.
2:15-cv-01785-
JAM-AC

OPINION

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Argued and Submitted En Banc September 24, 2019
San Francisco, California

Filed March 20, 2020

Before: Sidney R. Thomas, Chief Judge, and Ronald M.
Gould, Marsha S. Berzon, Johnnie B. Rawlinson, Carlos T.
Bea, Sandra S. Ikuta, Mary H. Murguia, Paul J. Watford,
Andrew D. Hurwitz, Mark J. Bennett and Ryan D. Nelson,
Circuit Judges.

Opinion by Judge Bea;
Dissent by Judge Berzon

# SUMMARY[*]

---

## Habeas Corpus

The en banc court affirmed the district court's denial of California state prisoner Anthony Smith's habeas corpus petition as untimely, in a case in which Smith argued that he was entitled to extend the one-year limitations period set forth in 28 U.S.C. § 2244(d)(1) by equitable tolling for the 66 days between the date his conviction became final in the state appellate court and the date when his attorney informed him of that unsuccessful appeal and provided him with the state appellate record.

The en banc court affirmed because Smith failed to exercise reasonable diligence during the 10 months available after he received his record from his attorney and before the time allowed by the statute of limitations expired.

In view of the historic practice of courts of equity and modern Supreme Court precedent governing equitable tolling, the en banc court made two related holdings.

First, for a litigant to demonstrate he has been pursuing his rights diligently, and thus satisfies the first element required for equitable tolling, he must show that he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing his claim in federal court. In so holding, the en banc court rejected the "stop-clock" approach under

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

which whenever a petitioner is impeded from filing his petition by extraordinary circumstances while the time period of a statute of limitations is running out, he may add the time during which he was so impeded to extend the limitations period, regardless whether he was reasonably diligent in filing his petition after the impediment was removed.

Second, it is only when an extraordinary circumstance prevented a petitioner acting with reasonable diligence from making a timely filing that equitable tolling may be the proper remedy. In evaluating whether an extraordinary circumstance stood in a petitioner's way and prevented timely filing, a court is not bound by mechanical rules and must decide the issue based on all the circumstances of the case before it.

Applying this framework to Smith's petition, the en banc court accepted Smith's allegations as true and assumed that his attorney's failure to contact him for five months after his state appeal was denied was sufficiently egregious so that it could qualify as an "extraordinary circumstance" that created an impediment to filing under the second required element for equitable tolling. The en banc court nevertheless concluded that Smith did not exercise the necessary diligence to satisfy the first element because when given the opportunity to explain how he had used his time diligently after receiving his file from his attorney, Smith made no allegation or claim in his opposition to the motion to dismiss or his supporting declaration that he had acted diligently but had not been able to file earlier.

Dissenting, Judge Berzon, joined by Chief Judge Thomas and Judges Murguia, Watford, and Hurwitz, wrote that the central problem with the majority's approach

concerns its substitution of its own determination of the time needed to file for Congress's clear prescription that petitioners are to be given 365 days to draft and file a federal habeas petition.

## COUNSEL

David M. Porter (argued), Assistant Federal Defender; Heather E. Williams, Federal Defender; Federal Defenders of the Eastern District of California, Sacramento, California; for Petitioner-Appellant.

Justain P. Riley (argued), Deputy Attorney General; Tami Krenzin, Supervising Deputy Attorney General; Michael P. Farrell, Senior Assistant Attorney General; Xavier Becerra, Attorney General; Office of the Attorney General, Sacramento, California; for Respondent-Appellee.

**OPINION**

BEA, Circuit Judge:

Anthony Smith is imprisoned in the custody of the California Department of Corrections and Rehabilitation having been convicted of burglary, robbery, and forcible oral copulation. He appeals the district court's denial of his petition for the writ of habeas corpus. The denial was ordered solely because Smith's petition was not timely filed. Smith acknowledges he filed his petition more than two months after the expiration of the applicable statute of limitations, *see* 28 U.S.C. § 2244(d)(1), but argues he was entitled to extend the limitations period by equitable tolling for the 66 days between the date his conviction became final in the state appellate court and the date when his attorney informed him of that unsuccessful appeal and provided him the state appellate court record. The district court found Smith was not diligent in his use of the 10 months remaining in the limitations period after he received the case file from his attorney and that the delay in receiving his record had not been the cause of his untimely filing. The district court refused to apply equitable tolling to toll the statute of limitations.

Smith asks us to reverse the district court and to extend the period of the statute of limitations by those 66 days. He asks us to adopt a flat rule: a "stop-clock" approach to equitable tolling so that whenever a petitioner is impeded from filing his petition by extraordinary circumstances while the time period of a statute of limitations is running out, he may simply add the time during which he was so impeded to extend the period of the statute of limitations, regardless whether he was reasonably diligent in filing his petition after the impediment was removed. What Smith requests is an application of equitable tolling that is contrary to Supreme

Court precedent and also contrary to traditional principles of equity, in which "each case as it arises must be determined by its own particular circumstances." *McQuiddy v. Ware*, 87 U.S. (20 Wall.) 14, 19 (1874). The rule he asks us to apply is something much more akin to the uniform, forward-looking actions of a legislature. But, of course, we are not a legislature; we are a court. Because, as a court, we must follow the precedents that require we employ principles of traditional equity and evaluate whether Smith was reasonably diligent in filing his habeas petition before we equitably toll the statute of limitations, we decline to adopt his suggested approach. Therefore, we affirm the district court's order denying Smith's habeas petition because Smith failed to exercise reasonable diligence during the 10 months available after he received his record from his attorney and before the time allowed by the statute of limitations expired.

## I. Background

Smith was convicted in California state court in 1998 of one count of residential burglary, two counts of robbery, and one count of forcible oral copulation. He was sentenced to 25-years-to-life. Smith was granted federal habeas relief in 2010 for the forcible oral copulation conviction, but after a retrial he was again convicted of forcible oral copulation and then again sentenced to 25-years-to-life in 2012. Smith appealed his conviction through the California courts, which denied his appeals. His state appeals culminated when the California Supreme Court issued a summary denial of his petition for review on March 12, 2014. Smith did not seek review in the United States Supreme Court, and his conviction became final on June 10, 2014, when the time for filing a petition for a writ of certiorari expired.

Smith was represented in his California state appeals by a court-appointed attorney. After the California Supreme

Court denied Smith's petition for review in March 2014, Smith alleges the next correspondence he had with his attorney was a letter received on August 15, 2014, which informed Smith that his California state appeal had been denied and that the attorney's representation of Smith was complete. Smith's attorney also returned the appellate record to Smith in the same mailing. Smith acknowledges that his attorney's letter was not the first time he learned that his appeal had been denied, and that his family had informed him of the denial three months earlier, around May 10, 2014. After Smith learned that the California Supreme Court had denied his appeal, Smith sent his attorney a letter the next day, requesting an update from the attorney and the immediate return of his appellate record so that Smith could prepare a federal habeas petition. When Smith did not receive a timely response to his letter, he filed a complaint with the California State Bar in June 2014. It appears that this complaint prompted Smith's attorney to contact Smith and return his appellate record in August 2014.

Appearing pro se, Smith filed his habeas petition in the district court for the Eastern District of California on August 14, 2015, asserting nearly identical claims to those he had made to the California Supreme Court. California moved to dismiss Smith's petition as untimely filed. According to the State, the one-year statute of limitations allowing for state prisoners to file federal habeas petitions had expired on June 10, 2015, one year after Smith's conviction became final. Smith filed an opposition arguing that he was entitled to equitable tolling from June 10 to August 15, 2014 and claimed the statute of limitations did not expire until August 15, 2015, the day after his petition was filed. Smith argued he was entitled to equitable tolling for that 66-day period because he had been abandoned by his attorney, did not have

access to his appellate record, and had been diligent in his attempts to contact his attorney to remedy the situation.

The magistrate judge assigned to Smith's case in the district court issued findings and recommended that California's motion to dismiss be granted. The magistrate judge noted that even though Smith did not receive his appellate record until two months after the time period prescribed by the statute of limitations had begun to run, he still had ten months thereafter in which to file his habeas petition on time. According to the magistrate judge, the "petitioner has offered no explanation as to why he was unable to file his federal petition during this ten month period"; instead it appeared "it was petitioner's own lack of diligence during the ten months after he received the appellate record, and not [the attorney's] delay in forwarding the records, that was the cause of petitioner's untimeliness." While the magistrate judge was "convinced that petitioner acted diligently to obtain his appellate record" from his attorney, she concluded that "there is no evidence that the delayed receipt of the file made timely filing impossible." The district judge adopted the findings and recommendations of the magistrate judge and denied the petition. Smith appealed.

A three-judge panel affirmed the district court, but we granted rehearing en banc to resolve a conflict within our cases about the nature of the diligence required for a petitioner to be eligible for equitable tolling. *See Smith v. Davis*, 740 Fed. App'x 131 (9th Cir. 2018), *reh'g en banc granted*, 931 F.3d 829 (9th Cir. 2019).

## II. Standard of Review

We review *de novo* the dismissal of a federal habeas petition as untimely, including "whether the statute of

limitations should be equitably tolled." *Fue v. Biter*, 842 F.3d 650, 653 (9th Cir. 2016) (en banc) (quoting *Corjasso v. Ayres*, 278 F.3d 874, 877 (9th Cir. 2002)). When, as here, the district court has not made factual findings "we accept the facts as alleged by the petitioner" for the purpose of determining whether, if proven, the allegations are sufficient to merit equitable tolling. *Id.* (alteration and internal quotation marks omitted).

## III. Discussion

### A.  *AEDPA and Equitable Tolling*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") subjects federal habeas corpus petitions filed by state prisoners to a one-year statute of limitations. 28 U.S.C. § 2244(d)(1). As relevant here, the time provided by the statute of limitations begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* § 2244(d)(1)(A).[1] The statute does provide that

---

[1] In other circumstances the limitations period could be restarted on:

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

while "a properly filed application for State post-conviction or other collateral review . . . is pending," the time period of the statute of limitations does not run. *Id.* § 2244(d)(2).[2]

In addition to this statutory tolling provision, the one-year statute of limitations is also subject to the doctrine of equitable tolling. *Holland v. Florida*, 560 U.S. 631, 634 (2010). A petitioner seeking equitable tolling bears the burden of establishing two elements: "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

The parties disagree about how these elements of equitable tolling should be applied. Smith argues that the only diligence required of one seeking equitable tolling is diligence in remedying the impediment to filing caused by the extraordinary circumstance. He reads *Holland*'s first element, "that he has been pursuing his rights diligently," to require no more than he pursue his rights diligently up to a point: the point at which the impediment to filing caused by the extraordinary circumstances has been abated. As applied to his case, Smith argues that because he was diligent in attempting to contact his attorney to obtain his appellate record after he learned about the denial of his appeal, it is irrelevant whether he used his time diligently after he

---

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(B)–(D).

[2] Smith did not file a habeas petition or otherwise seek collateral review in the state court.

received that record, and he is entitled to 66 days of equitable tolling so that he may have a full 365 days, free of any impediment to filing caused by an extraordinary circumstance, in which to file his habeas petition. California, arguing on behalf of the warden, takes an opposite position. The State argues that because Smith seeks the extraordinary remedy of equitable tolling of the statute of limitations, he must prove he was diligent throughout the time from when the state conviction became final to the filing of the habeas petition in federal court. Specifically, here, Smith would need to show that he was diligent in using the time available to him after he received his file from his attorney until he filed his habeas petition. The parties also disagree about what it means for an extraordinary circumstance to prevent timely filing. Smith argues the relevant question is whether the extraordinary circumstance prevented timely filing only while the circumstance existed. Applied to his case, he argues that his attorney's failure to return his appellate record was an extraordinary circumstance and that he could not prepare his habeas petition without this record, thereby satisfying the element. California, again, takes the broader view and argues the question whether an extraordinary circumstance prevented timely filing requires a fact-specific analysis to determine whether the extraordinary circumstance prevented a petitioner acting with reasonable diligence from filing within the one-year period.

Our cases applying the elements of equitable tolling, and specifically as it applies to habeas petitions brought under AEDPA, have not been particularly clear and point in opposite directions. In 2001, a three-judge panel declined to apply the stop-clock approach sought by Smith to tolling the AEDPA statute of limitations, but when an en banc court decided the case on rehearing, that issue was not addressed. *See Allen v. Lewis*, 255 F.3d 798, 801 (9th Cir. 2001), *rev'd*

*en banc*, 295 F.3d 1046 (9th Cir. 2002) (finding habeas petition timely filed even absent tolling). Then, later in 2001, in an immigration case heard by an en banc court, we took the approach advocated by Smith and held that equitable tolling in that case applied in a stop-clock manner so that "the days during a tolled period simply are not counted against the limitations period," without evaluating whether the petitioner had used his available time diligently. *Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1195 (9th Cir. 2001) (en banc). We chose this method over an alternative which would have required us to take a case-specific approach and evaluate whether a petitioner exercising ordinary diligence "reasonably could have been expected to bring a claim within the remainder of the limitations period" after the extraordinary circumstances ended. *Id.* at 1194. We found the stop-clock method easier to administer, more in line with Supreme Court precedent on equitable tolling, and consistent with the policy objectives of statutes of limitations. *Id.* at 1195.

In later cases, however, and especially after the Supreme Court decisions in *Pace* and *Holland*, habeas petitioners who sought to have AEDPA's statute of limitations equitably tolled have been required to demonstrate not only extraordinary circumstances that prevented timely filing while those circumstances existed but also that the petitioners, (1) had been diligent in using the time given to them before and after the extraordinary circumstances were dispelled, and (2) that the extraordinary circumstances were the cause of an untimely filing. *See, e.g.*, *Fue*, 842 F.3d at 656–57; *Gibbs v. Legrand*, 767 F.3d 879, 884–85 (9th Cir. 2014); *Spitsyn v. Moore*, 345 F.3d 796, 802 (9th Cir. 2003); *Lott v. Mueller*, 304 F.3d 918, 924–25 (9th Cir. 2002). Our principal effort to combine these holdings failed to provide the desired clarity. In *Gibbs* we declared the applicability of

the stop-clock approach to equitable tolling of the AEDPA statute of limitations. 767 F.3d at 892. However, we simultaneously acknowledged that "[c]ourts take a flexible, fact-specific approach to equitable tolling" and required an evaluation of a petitioner's diligence before, during, and after the extraordinary circumstance existed before granting relief to address the "causation question." *See id.* at 885, 892.

It is because our cases issued in the last two decades on the proper application of equitable tolling point in opposite directions that we granted rehearing en banc. To determine which line of cases controls Smith's eligibility for equitable tolling (and therefore which party is correct), we need look no further than the decisions issued by the Supreme Court in *Pace* and *Holland*. But because it also directs our decision, we first consider how and why courts have historically provided equitable relief.

B.  *Traditional Equity Jurisprudence*

Equity exists to address specific circumstances and not to create blanket, prospective rules or applications. *See McQuiddy*, 87 U.S. (20 Wall.) at 19 ("There is no artificial rule on such a subject, but each case as it arises must be determined by its own particular circumstances."). As put in Justice Joseph Story's *Commentaries on Equity Jurisprudence*, because "[i]t is impossible that any code, however minute and particular, should embrace or provide for the infinite variety of human affairs, or should furnish rules applicable to all of them," equity exists in "every rational system of jurisprudence" to address the cases in "which the antecedent rules cannot be applied without injustice, or to which they cannot be applied at all." 1 Joseph Story, *Commentaries on Equity Jurisprudence* 6–7 (13th ed. 1886); *see also The Federalist No. 83* (Alexander Hamilton) ("[T]he great and primary use of a court of equity is to give

relief in extraordinary cases, which are exceptions to general rules.").

Because equity requires a court to deal with the case before it, complete with its unique circumstances and characteristics, courts must take a flexible approach in applying equitable principles. The Supreme Court has been clear in this requirement, stating "exercise of a court's equity powers . . . . must be made on a case-by-case basis." *Baggett v. Bullitt*, 377 U.S. 360, 375 (1964). And when applying equitable tolling to the AEDPA statute of limitations in *Holland*, the Supreme Court stated "[t]he 'flexibility' inherent in 'equitable procedure' enables courts 'to meet new situations [that] demand equitable intervention, and to accord all the relief necessary to correct . . . particular injustices.'" 560 U.S. at 650 (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 248 (1944)).

But despite the flexibility that equity requires, "courts of equity must be governed by rules and precedents no less than the courts of law." *Lonchar v. Thomas*, 517 U.S. 314, 323 (1996) (citation omitted). As it applies to equitable tolling, the Supreme Court has been clear that one such rule that limits a court's equitable powers is that "a litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 755 (2016) (quoting *Holland*, 560 U.S. at 649). The first element, requiring diligence on the part of the litigant, flows from the traditional notion that "[c]ourts of [e]quity do not sit for the purpose of relieving parties, under ordinary circumstances, who refuse to exercise a reasonable diligence or discretion." 1 Joseph

Story, *supra*, at 226. Put differently, "equity aids the vigilant, not those who slumber on their rights." 1 John Norton Pomeroy, *A Treatise on Equity Jurisprudence as Administered in The United States of America* 393 (1881); *see also Pace*, 544 U.S. at 419 ("Equity always refuses to interfere where there has been gross laches in the prosecution of rights." (quoting *McQuiddy*, 87 U.S. (20 Wall.) at 19)). The second element comes from the fact-specific inquiry equity demands and the flexible remedies that it provides. For if an extraordinary circumstance is not the cause of a litigant's untimely filing, then there is nothing for equity to address.

## C. *Congressional Intent and Supreme Court Precedent*

The stop-clock method of equitable tolling Smith seeks runs counter to the traditional notion that "[c]ourts take a flexible, fact-specific approach to equitable tolling." *Gibbs*, 767 F.3d at 885. But he makes two arguments in favor of the stop-clock approach. First, he claims that applying the stop-clock approach is consistent with the expressed intent of Congress. And second, he claims that the Supreme Court has already decided that the stop-clock approach applies. We disagree with both points and address them in turn.

### 1. *Congressional Intent*

In asking us to grant him an additional 66 days to file his habeas petition, the core of Smith's argument is that because Congress established a one-year statute of limitations in AEDPA, 28 U.S.C. § 2244(d)(1), Congress intended for him to have 365 days, free of any impediment to filing caused by an extraordinary circumstance, to draft and file his petition after his conviction was final. Our dissenting colleagues also advance this as their principal disagreement with the result we reach today. Smith urges that the stop-clock remedy he

seeks is merely a fulfillment of obvious congressional intent. But statutes of limitations are not that simple, and such congressional intent is not so obvious.

As the Supreme Court stated in a case relied on heavily by the dissent, "[s]tatutes of limitations are primarily designed to assure fairness to defendants." *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 428 (1965). The Supreme Court has also more recently described statutes of limitations in general as serving the "basic policies of . . . repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities." *Rotella v. Wood*, 528 U.S. 549, 555 (2000). And more specifically, the Supreme Court has found "[t]he AEDPA statute of limitation promotes judicial efficiency and conservation of judicial resources, safeguards the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh, and lends finality to state court judgments within a reasonable time." *Day v. McDonough*, 547 U.S. 198, 205–06 (2006) (quoting *Acosta v. Artuz*, 221 F.3d 117, 123 (2d Cir. 2000)). At their core, "[s]tatutes of limitations require plaintiffs to pursue diligent prosecution of known claims," *CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014) (internal quotation marks omitted), and "protect defendants against stale or unduly delayed claims," *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133 (2008).

Requiring a petitioner who files after the deadline imposed by a statute of limitations has expired to show he has been diligently pursuing his rights up until the time he did file his petition does not ignore congressional intent—it furthers it. The dissent's contention that the purpose of AEDPA's statute of limitations is solely (or primarily) to protect the time available for the petitioner to file is not one

of the purposes for the statute of limitations the Supreme Court recognized in *Day*, *see* 547 U.S. at 205–06, and ignores the fact that "AEDPA seeks to eliminate delays in the federal habeas review process," *Holland*, 560 U.S. at 648. As the Supreme Court has held, AEDPA's goal of elimination of delays does not preclude the operation of equitable tolling, but it does refute the notion that the purpose of the limitations period is to protect petitioners alone. In fact, though we can speculate that Congress considered the needs of habeas petitioners as a part of its calculation before enacting a one-year statute of limitations, all we may say for certain is that Congress intended for states to have an affirmative defense against habeas petitions filed more than one year after a conviction became final. *See Day*, 547 U.S. at 205.

The dissent would ignore Supreme Court cases describing statutes of limitations as primarily protecting defendants—and in the habeas context as ensuring judicial efficiency and achieving finality for state judgments within a reasonable time—and elevate an ancillary aim of the statute of limitations to be its only one. On the other hand, requiring reasonable diligence through to the moment of filing protects the rights of all parties without unnecessarily sacrificing one to the other. Petitioners are able to file habeas petitions after the limitations period has expired and still have their claims evaluated on the merits—provided they were reasonably diligent in using their available time and showed that an extraordinary circumstance prevented them from filing within the one-year limitations period. At the same time, states receive a measure of finality and are not required to defend against petitions filed after the deadline by petitioners who have failed to pursue reasonably diligent prosecution of their claims.

Though we think our rule best serves the animating purposes of statutes of limitations, we also dispute the notion that equitable tolling, practiced consistent with governing precedent, could undermine the intent of a statute. This is because as the Supreme Court has recognized, Congress legislates against the backdrop of the equitable powers of courts and knows of the rebuttable presumption in favor of equitable tolling for statutes of limitations. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95–96 (1990). In statutes like AEDPA, where Congress has not acted to preclude equitable tolling, it intended for equitable tolling to apply and to be employed consistent with standard equitable concepts and governing precedent. That is what we do today.

Insofar as Smith believes Congress's inclusion of conditions which reset the start of the one-year limitations period, or the statutory tolling provision in AEDPA, which both work to the petitioner's benefit, *see* 28 U.S.C. § 2244(d)(1)(B)–(D), (d)(2), evinces an intent by Congress to alter the traditional way equitable tolling applies in AEDPA and to make its application more favorable to him, he is mistaken. Equitable tolling operates apart from any statutory provision. The authority by which courts equitably toll statutes of limitations comes not from any statute but instead from our exercise of "[t]he judicial Power . . . extend[ing] to all Cases, in Law and Equity, arising under th[e] Constitution, [and] the Laws of the United States." U.S. Const. Art. III, § 2. When courts apply equitable tolling to a statute of limitations, they are exercising that independent judicial power, consistent with governing law and precedent. This is distinct from any efforts to interpret a statute or to effect congressional intent behind statutory language.

### 2. *Supreme Court Precedent*

Smith's second argument, also favored by the dissent, that the stop-clock approach to equitable tolling is required by Supreme Court precedent, fares no better. We find the proper application of precedent to favor the flexible, circumstance-specific approach we adopt today.

In *Pace*, the Supreme Court addressed equitable tolling for the first time as it related to the AEDPA statute of limitations. *See* 544 U.S. at 418 n.8. At issue was whether the statute of limitations was tolled while the petitioner's untimely, and ultimately procedurally barred, petition for post-conviction relief was pending in state court. *Id.* at 410. Though the case dealt primarily with whether AEDPA's statutory tolling provision, 28 U.S.C. § 2244(d)(2), applied in these circumstances, after it was determined the petitioner was ineligible for statutory tolling, his claim for equitable tolling was also addressed. *See id.* at 418. In addressing the merits of the equitable tolling claim, the Court stated that to be eligible for equitable tolling the petitioner was required to show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Id.* The Court held that even if it assumed the pendency of the untimely state court petition "satisfied the extraordinary circumstance test," equitable tolling was nevertheless unavailable because the petitioner had not shown "the requisite diligence." *Id.* To determine whether the petitioner "has been pursuing his rights diligently," the Supreme Court evaluated the petitioner's diligence both before and after the

existence of the "extraordinary circumstance" and found it wanting.[3] *See id.* at 418–19.

*Pace* arose in unique circumstances because the state court conviction became final nearly four years before AEDPA's statute of limitations was enacted. However, after the time period of AEDPA's statute of limitations had begun to run in 1996, the petitioner waited nearly seven months before filing his state court post-conviction relief application (the pendency of which was assumed to be an "extraordinary circumstance"), and once that was denied, waited an additional five months to file for habeas relief in federal court. *Id.* at 419. In rejecting Pace's arguments that he was entitled to equitable tolling, the Supreme Court emphasized Pace's lack of diligence in all time frames, right up to Pace filing his federal habeas petition. *Id.* ("Had petitioner advanced his claims within a reasonable time of their availability, he would not now be facing any time problem, state or federal. And not only did petitioner sit on his rights for years *before* he filed his [state post-conviction relief] petition, but he also sat on them for five more months *after*

---

[3] The Supreme Court's phrasing of the first element required for equitable tolling is telling. The Court required Pace to demonstrate that he "*has been pursuing* his rights diligently"—not that he "pursued," "had pursued," or "has pursued" his rights diligently. This specific phrasing indicates a need for a petitioner to show his diligence continued up through the point of filing his habeas petition in federal court. *See The Chicago Manual of Style* ¶¶ 5.132, 5.135 (17th ed. 2017). Compare this to the second element, which is phrased in the simple past tense—"some extraordinary circumstance *stood* in his way"—and it is clear the Supreme Court's wording is intentional. Coupled with the Court's application of the rule for equitable tolling, which evaluated the petitioner's diligence before and after the extraordinary circumstance, and through the date he filed his federal habeas petition, there is no doubt that diligence is required through the period up to the actual filing of the petition to merit equitable tolling. *See Pace*, 544 U.S. at 419.

his [state] proceedings became final before deciding to seek relief in federal court.") (emphasis in original) (footnote omitted).

In addition to laying the foundation for future AEDPA equitable tolling decisions, a key aspect of *Pace* is that the Supreme Court actually had an opportunity to adopt the stop-clock rule Smith now seeks but refused to do so. Had the Supreme Court applied the stop-clock approach, the outcome in *Pace* would have been reversed, and the federal petition would have been timely filed, as it was indeed filed on the 363rd "untolled" day of the limitations period, under the stop-clock approach.[4] But the Supreme Court did not apply the stop-clock approach and evaluate only Pace's diligence in remedying his extraordinary circumstance. The Court evaluated Pace's diligence in all time periods, including those when he was free from impediments to preparing and filing his habeas petition that had been caused by any extraordinary circumstance. The Court found his "lack of diligence precludes equity's operation." *Id.* Bound

---

[4] Pace pleaded guilty to second degree murder in Pennsylvania state court in February 1986, and in September 1992, the Pennsylvania Supreme Court denied his appeal. AEDPA was passed on April 24, 1996, and the newly imposed statute of limitations began to run on April 25, 1996. Pace filed a petition for post-conviction relief in the Pennsylvania courts on November 27, 1996, which was pending for 974 days, and was finally denied by the Pennsylvania Supreme Court on July 29, 1999. Pace then filed a habeas petition in federal district court on December 24, 1999, which was 1337 days after the statute of limitations began to run. Subtracting the 974 days the state petition for post-conviction relief was pending from the time it took Pace to file a federal habeas petition after AEDPA was enacted left potentially 363 "untolled" days had the Supreme Court chosen to adopt the stop-clock approach and excuse Pace's lack of diligence. *See* 544 U.S. at 410–11. As noted, the Court did not adopt the stop-clock approach; it noted Pace's lack of diligence in filing and affirmed the denial of habeas as untimely.

as we are by the decisions of the Supreme Court, we follow this same approach today.

The dissent argues that we misunderstand *Pace* and that despite the Supreme Court's explicit evaluation of Pace's lack of diligence in preparing and filing his federal habeas petition both before and after his state petition was denied, such evaluation of his diligence was unnecessary to the decision, if it was even considered at all. The dissent believes that the Supreme Court put little or no weight on Pace's lack of diligence while the limitations period was expiring, including the seven months before he filed his state petition for post-conviction relief and the five months following the rejection of the state petition. *See* Dissent at 54 ("Essentially, the Court held that laches already barred Pace's claim when AEDPA was enacted, so he was entitled to no additional consideration after he was accorded an additional year."). This is a strange way to read a passage in a Supreme Court opinion that highlighted this exact lack of diligence. *See Pace*, 544 U.S. at 419 ("[Pace] also sat on [his rights] for five more months *after* his [state] proceedings became final before deciding to seek relief in federal court.") (emphasis in original). Further, the dissent's supposition that laches would have barred Pace's habeas petition (in the pre-AEDPA regime) simply because it was filed four years after his conviction was final finds no support in caselaw. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) ("[T]here is no statute of limitations governing federal habeas, and *the only laches recognized is that which affects the State's ability to defend against the claims raised on habeas*.") (emphasis added); *see also Day*, 547 U.S. at 215 (Scalia, J., dissenting) ("We repeatedly asserted [before AEDPA] that the passage of time alone could not extinguish the habeas corpus rights of a person subject to unconstitutional incarceration."). Simply put, the dissent's reading of *Pace* is too narrow, and

we do not adopt such a limited view of the only Supreme Court case in which the Supreme Court conclusively determined a habeas petitioner's eligibility for equitable tolling.

It is clear to us that the Court did factor Pace's lack of diligence after the statute of limitations was enacted, including his failure to pursue his rights diligently after the extraordinary circumstance abated, into its decision to deny him equitable tolling—a holding as to which no justice dissented. What relative importance this held when combined with Pace's years-long pre-AEDPA delay, and his additional seven month delay after the statute was enacted, we cannot say with certainty, but we know it was important enough for the Court to mention and consider in its opinion. But whatever relative weight Pace's various periods of non-diligence carried, we know for sure that the Supreme Court did not limit its diligence analysis, as the dissent would have us do, to the question in *Socop-Gonzalez*, whether Pace had been diligent in bringing about the end of his extraordinary circumstance. *See* 272 F.3d at 1196. If it had, its decision would have reversed, rather than affirmed, the judgment which denied the writ.

The Supreme Court next considered equitable tolling for habeas petitions in *Holland*, where it took an additional step that weighs against the application of the stop-clock approach here. In *Holland*, the Court added an explicit causation requirement to the rule for equitable tolling previously stated in *Pace*. *See Holland*, 560 U.S. at 649 ("[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' *and prevented timely filing*." (emphasis added) (quoting *Pace*, 544 U.S. at 418)). As we have previously

described it, whether an impediment caused by extraordinary circumstances prevented timely filing is a "causation question" that requires courts to evaluate a petitioner's diligence in all time periods—before, during, and after the existence of an "extraordinary circumstance"—to determine whether the extraordinary circumstance actually did prevent timely filing. *See Gibbs*, 767 F.3d at 892. Though the causation requirement announced in *Holland* modified the extraordinary circumstance prong of the test, it nevertheless speaks to the diligence required by a petitioner seeking equitable tolling. This is because the Supreme Court held that equitable tolling is not available whenever there is an extraordinary circumstance that impaired the litigant for some portion of the limitations period. It may apply only when an extraordinary circumstance prevented a petitioner from filing before the deadline expired. The only way for a court to evaluate whether an extraordinary circumstance caused the untimely filing is to examine and assess the facts of the case to determine whether a petitioner acting with reasonable diligence could have filed his claim, despite the extraordinary circumstance, before the limitations period expired. This stands in direct contrast to the position we adopted in *Socop-Gonzalez*. *See* 272 F.3d at 1194.[5]

The strongest argument Smith can make against the weight of this precedent is based on the earlier case of *Burnett v. New York Central Railroad Company*, 380 U.S. 424 (1965), which we cited in *Socop-Gonzalez* when

---

[5] We also note that, in *Holland*, as it had before in *Pace*, the Supreme Court evaluated the petitioner's diligence after the extraordinary circumstance was dispelled and did not apply a rigid stop-clock rule, though admittedly, this did not impact the outcome of the case. *See* 560 U.S. at 653.

adopting a stop-clock approach to equitable tolling, *see* 272 F.3d at 1195–96.

In *Burnett* a plaintiff timely filed a Federal Employers' Liability Act ("FELA") personal injury claim against his employer in state court, seeking compensation under the federal law. The federal claim was subject to a three-year statute of limitations. Ultimately, the state court dismissed the claim for improper venue under state law, and the plaintiff refiled in federal court eight days later but after the statute of limitations had expired. *Burnett*, 380 U.S. at 424–25.

Addressing the situation, the Supreme Court equitably tolled the statute of limitations and allowed the plaintiff's suit to proceed in federal court. *Id.* at 434–35. The Supreme Court commented on the plaintiff's diligence in bringing the claim in state court and treated that diligence as a prerequisite for equitable tolling. *See id.* at 429 ("Petitioner here did not sleep on his rights . . . ."). The Court also noted the plaintiff's diligence in refiling his claim in federal court eight days after his state court suit was dismissed, but this diligence notwithstanding, the Court was clear that it was tolling the limitations period for the entire period the state court claim had been pending and not merely for a "reasonable time." *Id.* at 435–36. This holding allowed the plaintiff to use whatever time remained of the limitations period when he filed in state court to refile in federal court, regardless of his diligence in refiling the claim. The concurrence by Justices Douglas and Black was explicit that the decision in *Burnett* to extend the limitations period automatically, rather than evaluate the plaintiff's diligence in refiling in federal court, ran counter to "long-established" and "familiar" equitable principles. *See id.* at 437 (Douglas, J., concurring). We acknowledge that *Burnett*, absent

subsequent development by the Supreme Court, would seem to direct a stop-clock approach that allows a plaintiff who qualifies for equitable tolling through diligence to extend the limitations period automatically by the full period of time that the extraordinary circumstance existed, but *Pace* and *Holland* were such developments.

Whatever the Court's reason in *Burnett* for veering from "long-established" and "familiar" applications of equity, modern Supreme Court cases citing *Burnett* have emphasized the diligence of the petitioner in *Burnett*, not the stop-clock application of equitable tolling. *See, e.g.*, *Irwin*, 498 U.S. at 96 & n.3 (characterizing *Burnett* as a case "where the claimant has actively pursued his judicial remedies"); *Int'l Union of Elec., Radio & Mach. Workers v. Robbins & Myers, Inc.*, 429 U.S. 229, 238 (1976) (quoting *Burnett*'s statement that "[p]etitioner here did not sleep on his rights"); *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 558 (1974) (describing *Burnett* as involving a "suit in a state court within the three-year time limitation" and being refiled in federal court "[i]mmediately after the dismissal" in state court for improper venue). And none of these cases permitted equitable tolling where a litigant had not been persistent in pursuing his rights diligently. But most tellingly, when the Supreme Court explicitly established the two required elements of equitable tolling in *Pace* and *Holland*—diligence and causation—the Court did not apply the stop-clock approach, and citations to *Burnett* were nowhere to be found. *See Holland*, 560 U.S. at 634; *Pace*, 544 U.S. at 418. And since *Pace* was decided, the only citation to *Burnett* by a Supreme Court majority[6] was in

---

[6] *Burnett* was recently cited in a solo dissent in *Rotiske v. Klemm*, but the citation served to distinguish equitable tolling from the "fraud-

*Lozano v. Montoya Alvarez*, where the Court cited *Burnett*, not for its stop-clock rule, but for the notion that statutes of limitations are "designed to protect defendants," an argument counter to the one Smith and the dissent advance here. 572 U.S. 1, 14 (2014) (quoting *Burnett*, 380 U.S. at 428).

All of this is to say that any attempt by Smith to claim *Burnett* dictates the outcome of this case and excuses his lack of diligence after he received his files from his attorney is unavailing. Smith's argument ignores the fact that, even in *Burnett*, the plaintiff exercised diligence consistent with the rule we announce today, and more importantly, it ignores recent Supreme Court cases that have rejected the stop-clock approach and instead meticulously examined petitioner diligence when determining whether equitable tolling was warranted.

Smith's citation to the recent case of *Artis v. District of Columbia*, 138 S. Ct. 594 (2018), likewise does not support the outcome he seeks. For there, the Supreme Court was asked to decide the scope of the statutory tolling provision contained in 28 U.S.C. § 1367, the federal supplemental jurisdiction statute, and accordingly, was not asked to decide how to apply equitable tolling or determine whether the plaintiff had exercised any measure of diligence. *See Artis*, 138 S. Ct. at 600–01 (describing the case as "resolv[ing] the division of opinion among State Supreme Courts on the proper construction of § 1367(d)").

*Artis* addressed a narrow question, whether section 1367(d)—not the doctrine of equitable tolling—

based discovery rule" and does not provide support to Smith's arguments here. *See* 140 S. Ct. 355, 363–64 (2019) (Ginsburg, J., dissenting).

functioned to suspend state periods of limitations for the entire time state claims were pending in federal court, plus thirty days, or whether the law provided merely a thirty-day grace period for a litigant to refile in state court after a federal court declined supplemental jurisdiction over the state-law claim. *Id.* The answer to this question has nothing to do with the issue we address today. The Supreme Court's decision that the proper way to read section 1367(d) is to suspend the running of the statute of limitations, and not merely to grant litigants a 30-day grace period, was based on a plain text reading of section 1367(d), not principles of equity. *See id.* at 603–04. However, in rendering its decision, the Court noted that it commonly uses the "terms 'toll' and 'suspend' interchangeably," *id.* at 601–02, and that prior decisions of the Court had described equitable tolling as "paus[ing] the running of" a statute of limitations, *id*. at 602 (quoting *CTS Corp. v. Waldburger*, 573 U.S. 1, 9 (2014)). It is based on these statements that Smith and the dissent argue *Artis* supports the position that Smith is entitled to equitable tolling even if he did not use the time available to him diligently after he received his appellate record from his attorney.

Smith asks us to read the statement in *Artis* that equitable tolling may serve to pause the period of a statute of limitations as excusing him from the requirements for equitable tolling explicitly described in *Pace* and *Holland*. *Artis* does not support such an argument. *Artis* had almost nothing to say about equitable tolling, and what it did say did not alter the rule that "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649 (internal quotation marks omitted). The cases *Artis* cited for the idea that equitable tolling

pauses, or suspends, a statute of limitations do not suggest otherwise and do not support an application of equitable tolling in a circumstance where a litigant has not diligently pursued his rights before, during, and after the existence of an extraordinary circumstance.[7]

---

[7] *Artis* characterized *CTS Corp.* as "describing equitable tolling as 'a doctrine that pauses the running of, or 'tolls' a statute of limitations.'" *Artis,* 138 S. Ct. 602 (quoting *CTS Corp.*, 573 U.S. at 9). This is true, but *CTS Corp.* is explicit that equitable tolling applies only "when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." 573 U.S. at 9 (quoting *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014)). *Artis* also quotes *United States v. Ibarra*, which predates *Pace* and *Holland*, but states, "[p]rinciples of equitable tolling usually dictate that when a time bar has been suspended and then begins to run again upon a later event, the time remaining on the clock is calculated by subtracting from the full limitations period whatever time ran before the clock was stopped." 502 U.S. 1, 4, n.2 (1991) (per curiam). *Ibarra* addressed when the government's 30-day window to appeal district court orders in criminal cases began and did not involve an application of equitable tolling. It thus provides little guidance on how to determine eligibility for equitable tolling, but the opinion cited a Seventh Circuit opinion by Judge Posner, *Cada v. Baxter Healthcare Corporation*, 920 F.2d 446 (7th Cir. 1990), as standing for the "principles of equitable tolling." *Ibarra*, 502 U.S. at 4, n.2. *Cada* is explicit that equitable tolling is available only when the plaintiff exercises "all due diligence," including the diligence required to "bring suit within a reasonable time after" an extraordinary circumstance ends and that the period of limitations is not tolled automatically. 920 F.2d at 451, 453; *id.* at 452 ("We do not think equitable tolling should bring about an automatic extension of the statute of limitations by the length of the tolling period or any other definite term. It is, after all, an equitable doctrine. It gives the plaintiff extra time if he needs it. If he doesn't need it there is no basis for depriving the defendant of the protection of the statute of limitations." (citation omitted)); *see also Socop-Gonzalez*, 272 F.3d at 1194 (citing *Cada* as rejecting a stop-clock approach that ignored a lack of diligence after the removal of the extraordinary circumstance that impeded filing).

*Artis* did not involve a determination of whether a litigant was eligible for tolling (equitable or otherwise) and addressed no more than the mechanical calculation of the new litigant-specific limitations deadline, *after* a court makes the determination that the litigant qualifies for tolling. *See Artis*, 138 S. Ct. at 598–99. The case sheds no light on the underlying question of which litigants are eligible for such extended limitations deadlines. In cases involving equitable tolling, *Pace* and *Holland* still govern that inquiry. At most, the effect of *Artis*'s observation that equitable tolling may serve to "pause[] the running of . . . a statute of limitations," *id.* at 602, was to confirm that the maximum additional time, beyond the period of limitations, available to a litigant otherwise eligible for equitable tolling, is equal to the amount of time that the extraordinary circumstance that impeded timely filing existed. As far as we know, this was not in dispute.

D.  *The Proper Rule of Equitable Tolling of Statutes of Limitations*

In view of the historic practice of courts of equity and modern Supreme Court precedent governing equitable tolling, we make two related holdings. First, for a litigant to demonstrate "he has been pursuing his rights diligently," *Holland*, 560 U.S. at 649, and thus satisfies the first element required for equitable tolling, he must show that he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing his claim in federal court. This rule is in accord with the traditional concept that equity requires diligence and is also consistent with recent Supreme Court practice. Though we today reject the stop-clock approach we took in *Socop-Gonzalez* for evaluating when a petitioner must be

diligent,[8] this does not alter what it means for a petitioner to exercise diligence. On that issue the rule remains that "[t]he diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" *Holland*, 560 U.S. at 653 (citations omitted). In determining whether reasonable diligence was exercised courts shall "consider the petitioner's overall level of care and caution in light of his or her particular circumstances," *Doe v. Busby*, 661 F.3d 1001, 1013 (9th Cir. 2011), and be "guided by 'decisions made in other similar cases . . . with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case.'" *Fue*, 842 F.3d at 654 (quoting *Holland*, 560 U.S. at 650). What we make clear is that it is not enough for a petitioner seeking an exercise of equitable tolling to attempt diligently to remedy his extraordinary circumstances; when

---

[8] As mentioned previously, *Socop-Gonzalez* rested its decision to apply equitable tolling in a manner that ignored a litigant's diligence after remedying an extraordinary circumstance on three factors: (1) congressional intent; (2) Supreme Court precedent; and (3) ease of administration. 272 F.3d at 1195. Today we explicitly reject the first two rationales and hold that diligence only up to the point of the removal of the impediment caused by the extraordinary circumstances is not enough to merit equitable tolling. In 2001, we did not have the benefit of the Supreme Court's decisions in *Pace* and *Holland*, which undermine the continued validity of the first two reasons we gave for adopting the stop-clock approach. This leaves just the third rationale: ease of administration. Standing alone, whether the stop-clock approach is easier to administer than the rule we announce today is debatable but ultimately of no consequence. *Pace* and *Holland* illustrate that in application of the extraordinary remedy of equitable tolling, individual, and perhaps painstaking, analysis of the specific case overcomes considerations of convenience. If ease of administration is indeed a better policy, it is one for Congress, not the courts, to adopt. But we have no doubt that district courts will be able to apply equitable tolling consistent with the traditional concepts of equity, Supreme Court precedent, and the rule we announce today.

free from the extraordinary circumstance, he must also be diligent in actively pursuing his rights.[9]

---

[9] Contrary to the belief of the dissent we make no holding "that 364 days is *always* too long a period within which to prepare a federal habeas petition." Dissent at 65. Nor do we announce a rule that any time long stretches of time pass without a petitioner acting on a habeas petition is it necessarily a situation where a petitioner failed to exercise reasonable diligence. *See Huizar v. Carey*, 273 F.3d 1220, 1224 (9th Cir. 2001) (finding a petitioner's wait of 21 months before seeking an update on his petition from a state court was an exercise of reasonable diligence).

The dissent's characterization of our court's application of equitable tolling as based on such arbitrary considerations as "the length of each chancellor's foot," Dissent at 41, not only disserves our judiciary, it ignores our safeguard against such arbitrariness: our standard of review in habeas cases is *de novo*. *See* ante at 8–9. Such characterization is particularly inept here where the magistrate judge carefully weighed the evidence and fully explained her decision.

We also find the dissent's criticism that today's decision provides no guidance for future district courts or three-judge panels to decide cases involving requests for equitable tolling misplaced. As an initial matter, our precedents, *Socop-Gonzalez* notwithstanding, already require courts to go through the general diligence analysis we outline today. *See Gibbs*, 767 F.3d at 892. And as discussed previously, one of the benefits of equitable doctrines is that they allow courts to fashion remedies tailored to the circumstances of the case, within the bounds of governing precedent. Further, the evaluation of diligence is hardly new territory for trial courts. For example, in evaluating motions for new criminal trials or relief from civil judgments, courts must regularly evaluate whether newly discovered evidence could have been discovered earlier with reasonable diligence. *See* Fed. R. Civ. P. 60(b)(2); *United States v. Harrington*, 410 F.3d 598, 601 (9th Cir. 2005). And finally, both our approach and the one favored by the dissent, require courts to evaluate whether a petitioner, who is imprisoned and usually filing pro se, exercised the required diligence. The difference between our rule and the dissent's, as it relates to a court's evaluation of a petitioner's diligence,

Second, and relatedly, it is only when an extraordinary circumstance prevented a petitioner acting with reasonable diligence from making a timely filing that equitable tolling may be the proper remedy. This rule aligns with the flexible and fact-specific nature of equity and is directed by Supreme Court precedent. To be clear, this rule does not impose a rigid "impossibility" standard on litigants, and especially not on "pro se prisoner litigants—who have already faced an unusual obstacle beyond their control during the AEDPA limitation period." *Fue*, 842 F.3d at 657 (quoting *Sossa v. Diaz*, 729 F.3d 1225, 1236 (9th Cir. 2013)). In evaluating whether an "extraordinary circumstance stood in [a petitioner's] way and prevented timely filing," a court is not bound by "mechanical rules" and must decide the issue based on all the circumstances of the case before it. *Holland*, 560 U.S. at 649–50 (internal quotation marks omitted).

E. *Equitable Tolling Applied to Smith's Petition*

Accepting Smith's allegations as true, and assuming that his attorney's failure to contact him for five months after his state appeal was denied[10] was sufficiently egregious so that it could qualify as an "extraordinary circumstance" that created an impediment to filing under the second required element for equitable tolling, we nevertheless conclude Smith has not exercised the necessary diligence to satisfy the

is that one requires an evaluation of a petitioner's diligence across the whole time involved, and the other conducts the same inquiry but for just part of the time.

[10] This includes three months after the California Supreme Court denied Smith's appeal but before the decision was finalized, and an additional 66 days after the decision was final and the time period of the statute of limitations began to run.

first element and may not have the statute of limitations tolled to excuse his late filing.

Smith's appeal was denied by the California Supreme Court on March 12, 2014 and became final on June 10, 2014. According to Smith, he learned from his family that his appeal had been denied on May 10, 2014, and he received his appellate record from his attorney on August 15, 2014. Smith's habeas petition was filed in the district court on August 14, 2014, 364 days after Smith received his appellate record and 65 days after the limitations period expired. Smith's habeas petition was a 48-page document consisting of 20 pages of facts and background and 28 pages of legal analysis and argument. The petition consisted almost exclusively of items written previously by Smith's court-appointed attorney and submitted in briefs to the California appellate courts. The facts and background were copied with only minor alterations from Smith's brief to the California Court of Appeal.[11] And the legal argument section was taken nearly verbatim from the legal arguments previously submitted by Smith to the California Supreme Court, though Smith omitted from his federal habeas petition a challenge to jury instructions he had raised to the state supreme court.

In the district court, after California moved to dismiss Smith's petition as untimely, Smith filed an opposition brief and supporting declaration. In his opposition papers Smith argued that he was diligent in attempting to maintain contact with his attorney and in seeking the return of his case file after he learned his California Supreme Court appeal had

---

[11] Smith's brief to the California Supreme Court is part of the record before us, but his brief to the California Court of Appeal is not. However, we may take judicial notice of this document and do so. *See Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011).

been denied. Citing *Gibbs*, Smith acknowledged that our cases have evaluated "[d]iligence *after* an extraordinary circumstance is lifted"[12] in making determinations about equitable tolling. But Smith alleged no facts, argued no circumstances, and made no claim that he had been diligent in preparing his habeas petition after he had received his file from his attorney. The only diligence with which Smith claimed to have acted was in contacting his attorney to remedy the extraordinary circumstance that he lacked his case file. As we have now held, this was not enough.

The problem with Smith's request for equitable tolling is not simply that he took 364 days after receiving his case file to file his habeas petition. We have no trouble imaging a circumstance where a petitioner is impeded by extraordinary circumstances from working on a habeas petition for two months, but after those circumstances are dispelled, uses the next 364 days diligently, files his petition, and has the entire two months during which the extraordinary circumstances existed equitably tolled. What reasonable diligence would look like in those circumstances varies based on the specifics of the case, but in every instance reasonable diligence seemingly requires the petitioner to work on his petition with some regularity—as permitted by his circumstances—until he files it in the district court. The problem with Smith's

---

[12] Smith also noted that in *Gibbs* we stated a lack of diligence after an extraordinary circumstance ended was "not alone determinative" in deciding eligibility for equitable tolling. *See* 767 F.3d at 892. But despite this statement in *Gibbs*, Smith was on notice by other statements in *Gibbs* that we would consider his diligence after the extraordinary circumstance ended as part of our overall assessment to determine whether he was entitled to equitable tolling. *See id.* When responding to the State's motion to dismiss, Smith had the necessary notice and incentives to claim he had diligently pursued his rights after he received his case file from his attorney, but he did not do so.

request for equitable tolling is that when given the opportunity to explain how he had used his time diligently after receiving his file from his attorney and thus merited equitable tolling, Smith made no allegation or claim in his opposition to the motion to dismiss or his supporting declaration that he had acted diligently but had not been able to file earlier.

Nor is the only trouble with Smith's request for equitable tolling the fact that his habeas petition consisted almost exclusively of materials that had been prepared and filed in state courts years earlier. We agree with the Seventh Circuit that when a petitioner acts diligently to prepare a habeas petition, it matters not if he recycles arguments previously made by counsel to state courts. *See Socha v. Boughton*, 763 F.3d 674, 688 (7th Cir. 2014). But again, the petitioner must act with diligence in preparing his petition to warrant equitable tolling; Smith has not alleged that he was diligent in this manner.

In the absence of any claim by Smith that he was diligent in preparing his habeas petition after he received his case file, we fail to see how Smith exercised reasonable diligence and why, if he had, Smith would have been unable to file a habeas petition in the district court before the time period of the statute of limitations expired on June 10, 2015. The district court correctly held Smith had not met the criteria for equitable tolling and denied Smith's habeas petition as untimely.

**AFFIRMED.**

BERZON, Circuit Judge, joined by THOMAS, Chief Judge, and MURGUIA, WATFORD, and HURWITZ, Circuit Judges, dissenting:

Anthony Smith's state court convictions became final on June 10, 2014.[1] For the sixty-six days that followed, Smith's former attorney failed to deliver Smith's appellate record to him despite repeated requests. Smith filed his federal petition for habeas corpus 364 days after his record arrived.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") contains a statute of limitations of 365 days for the filing of a federal petition for habeas corpus challenging a state conviction. 28 U.S.C. § 2244(d). Congress could, of course, have opted for more time or less. But it determined that 365 days is the number of days reasonably required for habeas petitioners to prepare their petitions. In doing so, Congress required habeas petitioners to exercise a certain level of diligence: the diligence required to file within 365 days.

*Holland v. Florida* held that Congress intended that the doctrine of equitable tolling apply to this 365-day limitations period. 560 U.S. 631, 645 (2010). To obtain equitable tolling, a habeas petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). The majority today holds that under this standard, if an extraordinary circumstance existed for a part (or all) of the 365 days Congress prescribed as the period available for preparing a federal habeas petition, the

---

[1] Smith was convicted of one count of residential burglary, two counts of robbery, and one count of forcible oral copulation.

petitioner may have *less* than 365 days to complete the petition, based on a free-floating judicial determination of whether, notwithstanding the impediment, the petitioner was sufficiently diligent during the less-than-365 day period available to him.[2]

The central problem with the majority's approach concerns its substitution of its own determination of the time needed to file for Congress's clear prescription that petitioners are to be given 365 days to draft and file a federal habeas petition. In the majority's view, if equitable tolling is invoked, no deference is owed to Congress's determination of the amount of time reasonably required to prepare a petition.[3] For the majority, "the judicial Power" furnishes authority to impose, on an ad hoc basis, individual judges' own views as to the time it should take to prepare and file a habeas petition. Maj. Op. at 18 (citing U.S. Const. Art. III, § 2).

In the absence of a statute of limitations, of course, judges have no choice but to draw discretionary lines as to when a particular claim should be time-barred.[4] But where a

---

[2] The majority assumes that Smith's attorney's wrongful withholding of his records constituted an extraordinary circumstance, and so we do as well. Majority Opinion ("Maj. Op.") at 33.

[3] The majority views the congressionally established limitations period as a one-way ratchet where equitable tolling is at issue, such that judges can provide *less* total time than the statutory limitations period once the time covered by the extraordinary circumstance is subtracted but not more. *See* Maj. Op. at 30. On this view, the congressional determination of the time needed to file merits deference when equitable relief is to be denied but not when it is to be granted. We are not told why that should be the case.

[4] That is how the laches doctrine operates. *See, e.g.*, *Int'l Tel. & Tel. Corp. v. Gen. Tel. & Elecs. Corp.*, 518 F.2d 913, 926 (9th Cir. 1975).

legislature has determined the time it should reasonably take to file an initial pleading, there is no need for such ad hoc, inevitably inconsistent, decision-making, and so no excuse for it. Here, Congress has spoken—the period of time a petitioner may devote to preparing a federal habeas petition is one year, or 365 days. As one of our colleagues put it some time ago with regard to the issue before us, "[a] year is a year is a year." *Lott v. Mueller*, 304 F.3d 918, 927 (9th Cir. 2002) (McKeown, J., concurring). The majority's insistence to the contrary notwithstanding, we are bound to respect Congress's policy judgment to the degree that we can even when applying an equitable doctrine.

This fundamental precept was at the core of this Court's carefully considered en banc opinion in *Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176 (9th Cir. 2001). There, we rejected an interpretation of equitable tolling's diligence requirement which would have empowered judges to deny equitable relief whenever *they* believed that a claimant reasonably could have filed faster—that is, the version of equitable tolling the majority now enthusiastically adopts. *Id.* at 1194–95. *Socop-Gonzalez* held instead that where a petitioner is prevented from timely filing because an extraordinary circumstance stood in his way for part of the limitations period and is otherwise eligible for equitable tolling, he is afforded the time he lost during the extraordinary circumstance. *Id.* at 1195–96. That is, the extraordinary circumstance "*stops the clock* until the occurrence of a later event that permits the statute to resume running."[5]  *Id.*

---

[5] As I discuss later, the Supreme Court has recently explained that this understanding of what "tolling" means comports with both the ordinary legal meaning of the word of the word "tolling" and its use in the equitable tolling context. *Artis v. District of Columbia*, 138 S. Ct. 594, 601–02 (2018).

at 1195. The stop-clock approach to equitable tolling, as we said in *Socop-Gonzalez*, is more respectful of congressional intent, more compatible with the common understanding of "tolling" and with Supreme Court precedent, and more sensitive to the realities of judicial administration than one which depends on the judge's "subjective view of how much time a plaintiff reasonably needed to file suit." *Id.* at 1195–96.

After *Socop-Gonzalez*, some opinions of this court muddled *Socop-Gonzalez*'s clarity by focusing on whether a petitioner could have filed faster than he did *after* an extraordinary circumstance had abated in deciding whether a statute of limitations was equitably tolled. *See Gibbs v. Legrand*, 767 F.3d 879, 890–91 (9th Cir. 2014). *Gibbs* noted the tension between examining a petitioner's post-extraordinary-circumstance diligence in the abstract and *Socop-Gonzalez*'s teaching that "courts should not take it upon themselves to decide how much time a claimant needs to file a federal case." *Id.* at 891–92. Attempting to reconcile these two strains, *Gibbs* explained that equitable tolling's diligence requirement ensures that the allegedly extraordinary circumstance actually prevented timely filing—that is, helps establish causation—but does not invite judges to substitute a judicial determination of the time it should take to file for a legislative one. *Id.* at 892.

Starting anew and purporting to return to "principles of traditional equity," the majority opinion overrules *Socop-Gonzalez* and holds that equitable tolling may be denied whenever a judge concludes—on an entirely ad hoc basis—that a claimant reasonably could have filed his lawsuit faster than he did once the extraordinary circumstance was removed. Maj. Op. at 6. The majority's analysis—and its excuse for overruling *Socop-Gonzalez*—rests in large part

on its limited understanding of equity's history, portraying that history as establishing little more than the proposition that equity is flexible and fact-specific. That proposition is accurate, as far as it goes. But the majority's version of "traditional equity" is incomplete, disregarding a strong and competing development in American equity jurisprudence: the effort to restrain the discretion courts of equity once wielded and to roundly reject a view in which equity depends on "the length of each chancellor's foot." *Lonchar v. Thomas*, 517 U.S. 314, 323 (1996) (citing 1 J. Story, Commentaries on Equity Jurisprudence 16 (13th ed. 1886)). With regard to equitable tolling in particular, that restraint has been effectuated in large part through respect for legislative determinations of the total period of time a plaintiff or petitioner should have to prepare initial pleadings. By brushing aside any need to incorporate that legislative determination into its equitable tolling analysis, and by substituting a pure chancellor's-foot approach to determining whether the plaintiff or petitioner worked quickly enough, the majority flaunts the understanding of equity jurisprudence that has developed in this country since its founding.

Incorporating its one-sided understanding of the place of judicial discretion in American equity jurisprudence, the majority opinion goes on to misapply or disregard the three considerations on which *Socop-Gonzalez* rested its stop-clock approach—congressional intent, Supreme Court precedent, and administrability. As to Supreme Court precedent in particular, the majority insists that that precedent has fundamentally changed since *Socop-Gonzalez*. It decidedly has not.

At the end of its opinion, the majority applies its new non-standard to the facts of this case. In doing so, the

majority makes clear that its talk of "the fact-specific inquiry equity demands" serves largely to obfuscate an approach that plucks from the air—or measures by the chancellor's foot— the conclusion that, despite a congressionally-enacted 365- day limitations period, 364 days is too long a period within which to prepare a habeas petition. With *Socop-Gonzalez* abandoned, such arbitrary judgments, disregarding *both* the legislative judgment about the total time period that should be available to file a lawsuit *and* the facts of the particular case, will come to predominate applications of equitable tolling.

## I. American Equity Jurisprudence and Judicial Restraint

The majority begins its analysis with a discussion of "Traditional Equity Jurisprudence," purporting to undertake a historical analysis. Maj. Op. at 13–15. I therefore begin as well with some history concerning equity jurisprudence, but with an emphasis absent from the majority's approach—the care taken in this country to ensure that judicial exercise of its equitable authority comfortably coexists with closely related legislative enactments. This discussion will prove helpful, I hope, in explaining why the majority's paean to principles of traditional equity offers no reason to abandon *Socop-Gonzalez*'s well-considered en banc holding.

Equitable tolling dates from an era in English history when the separation of legislative and judicial power was incomplete. Until the Glorious Revolution of 1688, the Crown "had pretensions to independent legislative authority," and the authority of English judges derived from their status as agents of the Crown. John F. Manning, *Textualism and the Equity of the Statute*, 101 Colum. L. Rev. 1, 36–37 (2001). Such judges would not have had any sense that their application of principles of equity might "usurp[] the responsibilities of a different branch" of government. *Id.*

at 42–43, 53; *see also McQuiggin v. Perkins*, 569 U.S. 383, 409–10 (2013) (Scalia, J., dissenting).

In the American system, by contrast, fears of judicial usurpation of legislative authority have driven equity jurisprudence from the first. During the debates over the Constitution's ratification, prominent anti-federalists objected to Article III's extension of the judicial power to cases in equity on precisely such grounds. "It is a very dangerous thing to vest in the same judge power to decide on the law, and also general powers in equity; for if the law restrain him, he is only to step into his shoes of equity, and give what judgment his reason or opinion may dictate." Letters from the Federal Farmer No. III (Oct. 10, 1787), *in* 2 The Complete Anti-Federalist 234, 244 (H. Storing ed. 1981). In particular, the anti-federalists worried that the grant of powers in equity would enable judges to avoid "being confined to the words or letter" of the Constitution or of legislative enactments. Brutus No. XI (Jan. 31, 1788), *in id.* at 417, 419.

Those who favored ratification of the Constitution shared these concerns to some extent. They responded to critiques of federal equity jurisdiction by emphasizing that Article III judges would be "bound down by strict rules and precedents, which serve to define and point out their duty in every case that comes before them." The Federalist No. 78 (Alexander Hamilton). "Although the purpose of a court of equity was 'to give relief in extraordinary cases, which are exceptions to general rules,' 'the principles by which that relief is governed are now reduced to a regular system.'" *Trump v. Hawaii*, 138 S. Ct. 2392, 2426 (2018) (Thomas, J., concurring) (quoting The Federalist No. 83 (Alexander Hamilton)).

After the ratification of the Constitution—with Article III's grant of jurisdiction over "all Cases, in Law and Equity," U.S. Const. Art. III, § 2—concerns remained that judges would exercise their powers in equity to undermine legislative and executive authority. Alarmed at (what he saw as) a tendency to treat equity "as a source of nearly unbounded judicial discretion," Justice Joseph Story— quoted by the majority several times, but without acknowledgement of his disquiet about the exercise of unbridled judicial power in the guise of equity jurisprudence—devoted himself to developing equity jurisprudence into a "science." Gary L. McDowell, Equity and the Constitution 74–76 (1982). Justice Story's purpose in doing so was to assure that the discretion equity confers would be used "not to act arbitrarily, according to men's wills and private affections" but would rather "be governed by the rules of law and equity, which are not to oppose, but each in its turn to be subservient to the other." J. Story, 1 *Commentaries on Equity Jurisprudence* § 13 (14th ed. 1918).

Attention to congressional intent proved critical to the effort in this country to restrain the exercise of powers in equity and thereby to guard against judicial usurpation of the coordinate branches of government. So, although Article III endows the judiciary with equity jurisdiction, American courts have (until now) never viewed equitable relief as *purely* a matter of judicial discretion, created anew for each case and each circumstance. Rather, federal courts have avoided the separation-of-powers problems that might otherwise be posed by the broad and idiosyncratic powers English courts of equity once wielded by recognizing that legislatures understand that they act against the backdrop of existing law, including equitable principles. Concomitantly, judges exercising their equitable authority endeavor to

incorporate legislative enactments to the degree consistent with equitable doctrines. Given that dual dynamic, whether equitable relief is appropriate in a particular instance necessarily incorporates considerations of legislative intent.

In the famous case of *Riggs v. Palmer*, for example, a statute governing wills was interpreted to incorporate the equitable doctrine of unclean hands on the ground that the legislature intended for the doctrine to apply, because the legislature could not have meant to allow murderers to inherit the estates of those they murdered. 115 N.Y. 506, 510–12 (1889). Similarly, the Supreme Court has repeatedly declared that whether to apply equitable tolling is "fundamentally a question of statutory intent." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014). It was on this basis that *Holland* held that Congress intended AEDPA's statute of limitations to be equitably tolled in appropriate circumstances. 560 U.S. at 645–46; *see also McQuiggin*, 569 U.S. at 398 n.3; *id.* at 409–10 (Scalia, J., dissenting).

If a statute of limitations has been adopted, legislative intent determines not only *whether* equitable tolling is available, but also, if it is available, how it is to be applied. Statutes of limitation reflect policy judgments as to the length of time within which plaintiffs or petitioners should reasonably be expected to file. To take one early English example, a statute codified a common law limitations period based on "a reasonable time" that it would take a party, "wheresoever he dwelt in England," to reach the court of justice "wheresoever" it sat. Edward Coke, The Second Part of the Institutes of the Laws of England 567 (1642).

Equity jurisprudence has long been sensitive to such legislative determinations of the time it should take a claimant to file. As early as 1767, English courts recognized:

> Expedit reipublicae ut sin finis litum [it is in the public interest that lawsuits come to an end] is a maxim that has prevailed in this court in all times without the help of an act of Parliament. *But as the court has no legislative authority, it could not properly define the time of bar by a positive rule to an hour, a minute, or a year*. It was governed by circumstances. But as often as Parliament had limited the time of actions or remedies to a certain period of legal proceedings, the Court of Chancery adopted that rule, and applied it to similar cases in equity.

J. Story, 3 *Commentaries on Equity Jurisprudence* § 1972 n.2 (14th ed. 1918) (quoting *Smith v. Clay*, Ambl. R. 645 (1767)) (emphasis added). To put the same point another way: In the absence of a statute of limitations, courts engage in a free-wheeling, independent assessment of how much time a claimant reasonably should take to pursue his claim, and how much delay should bar relief.[6] But once the legislature has made a policy determination as to the precise amount of time a claimant reasonably should have to file under ordinary circumstances, that policy determination sets a baseline for equity's operation. So, where a limitations period has been fixed by statute, courts of equity have acted "positively in obedience to such statute," 2 J. Story,

---

[6] "Equity, when there is no statute of limitations applicable to suits, fashions its own time limitations through laches." *Int'l Tel. & Tel. Corp.*, 518 F.2d at 926. But even in that circumstance, courts usually shy away from making their own policy judgments as to the time it should take to file: "Although analogous statutes do not necessarily control, equity will look to the statute of limitations relating to actions at law of like character and usually act or refuse to act in comity with such statutes." *Id.* (citation omitted).

*Commentaries on Equity Jurisprudence* § 705 (14th ed. 1918).

Against this long tradition of restraining equitable discretion out of respect for the separation of powers, the majority relies on "[t]he judicial Power" alone for the proposition that its application of equitable principles need not attend to congressional intent. Maj. Op. at 18 (citing U.S. Const. Art. III, § 2).  Once equitable tolling is invoked, the majority insists, judges are free to determine for themselves, in the name of equity, how long a filing should take to prepare, entirely disregarding the period of time chosen by Congress in the course of determining how long the functional limitations period should be. *Id.*

The fundamental problem with the majority's bald invocation of "[t]he judicial Power" is that it proves the anti-federalists' original point. Maj. Op. at 18 (citing U.S. Const. Art. III, § 2). Equitable tolling's place in the American system has been justified on the assumption that Congress acts against a stable backdrop of equity jurisprudence and common law. That assumption makes sense only if the background doctrines Congress assumes to apply are effectuated so that they coexist with rather than flaunt legislative determinations. In the equitable tolling context, that coexistence requires respect for the filing periods Congress has deemed reasonable. By instead invoking the judicial power as a source of raw authority to declare, on a blank slate, how much time a "diligent" habeas petitioner needs to file a federal habeas petition, the majority interprets Article III to be the very judicial supremacy provision its opponents feared.

## *II. AEDPA and Congressional Intent*

Consistently with the applicable principles of equity, *Socop-Gonzalez* invoked congressional intent as one of three considerations counseling in favor of the "stop-clock" rule. Pausing the limitations period, rather than replacing it with one invented by judges, avoids the separation-of-powers problem posed when a court "usurps congressional authority . . . [by] rewrit[ing] the statute of limitations" and "substituting its own subjective view of how much time a plaintiff reasonably needed to file suit." 272 F.3d at 1196. By reversing that well-considered holding, the majority institutes a new regime in this Circuit—a regime which sanctions the very judicial usurpation of congressional authority we warned against in *Socop-Gonzalez*.

Congress made a considered judgment in AEDPA that 365 days is the period of time  a prisoner should have to prepare and file a habeas petition. As Congress intended AEDPA's limitations period to be subject to equitable tolling, *Holland*, 560 U.S. at 645, it necessarily set the length of the limitations period with the understanding that, when extraordinary circumstances arise, a longer period is permitted for filing. How much longer? As we explained in *Socop-Gonzalez*, under the stop-clock approach to equitable tolling, when an extraordinary circumstance prevents a claimant from timely filing, the claimant receives the full time Congress determined he may take to file—365 days— but not more. The statute of limitations resumes running for any time remaining in it after the extraordinary circumstance that precluded filing has ended.[7] At the same time, the

---

[7] I note that the stop-clock rule provides the rationale absent from the majority's approach, *see* n.3, *supra*, for ending the limitations period on a day certain even when there is equitable tolling. Here, the

diligence requirement ensures that the claimed extraordinary circumstance actually denied the claimant the full time Congress intended he have to file, such that equity offers only relief, not a windfall. *See Doe v. Busby*, 661 F.3d, 1001, 1012–13 (9th Cir. 2011); *Roy v. Lampert*, 465 F.3d 964, 973 (9th Cir. 2006); *Spitsyn v. Moore*, 345 F.3d 796, 802 (9th Cir. 2003); *Valverde v. Stinson*, 224 F.3d 129, 134 (9th Cir. 2000); *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999). Under the majority's approach, in contrast, the congressional determination that 365 days is to be allowed is ignored, and one judge—or three, or eleven—may decide for themselves how much time a plaintiff or petitioner should have to put together an initial pleading.

The majority avoids grappling with the focus on congressional intent underlying *Socop-Gonzalez* in part by insisting that statutes of limitation are generally seen as protecting the rights of defendants, not plaintiffs. Maj. Op. at 16–17. The congressional determination *whether* to impose a statutory limitations period surely does turn largely on the perceived strength of defendants' interests in repose. But the question of *how long* a statute of limitations should

---

extraordinary circumstance existed on the day the limitations period began running, so Smith would have 365 days, not more, from the end of the extraordinary circumstance within which to file. And if, for example, Smith's extraordinary circumstance—say, a debilitating illness—had not arisen until midway through the limitations period, he still would have had, under the stop-clock approach, the number of days left in the limitations period after his recovery, not more, within which to file his petition.

be necessarily includes the consideration of how much time a plaintiff should have to file.[8]

In sum, the majority follows *Holland*, as it must, as to whether equitable tolling is available. But it does so begrudgingly, resisting *Holland*'s recognition that equitable tolling is available under AEDPA because it is fully consistent with, not at odds with, congressional intent. Instead of using the congressional determination of the applicable limitations period—a total of 365 days—the majority proclaims that once equitable tolling is invoked, "[t]he judicial Power" takes over, empowering judges to second-guess Congress's judgment of the time claimants should be given to file. Maj. Op. at 18 (citing U.S. Const. Art. III, § 2). I would reinstate *Socop-Gonzalez*'s preference for respecting rather than ignoring Congress's determination of the number of days available to prepare and file a lawsuit by stopping the clock for the period of the extraordinary circumstance.

### III. Supreme Court Precedent

Aside from its expansive invocation of judicial power, the majority's argument for abandoning *Socop-Gonzalez* rests on the assertion that the Supreme Court's decisions in

---

[8] The majority extensively quotes cases recognizing that the legislative decision to impose a statute of limitations reflects a policy judgment that defendants should be protected against claims of a certain age. Maj. Op. at 16. That recognition is correct. But the majority does not grapple with a basic point: if Congress were really exclusively concerned with protecting defendants, every limitations period would be extremely short. That is not the case. Congress determined, for example, that habeas petitioners should have 365 days to prepare and file their petitions, not ten or thirty or ninety or one hundred eighty days, all periods that would be more defendant protective. *That* determination is the legislative judgment that the majority refuses to respect.

*Pace* and *Holland* overturned (sub silentio) the Supreme Court cases *Socop-Gonzalez* relied upon as a basis for adopting the stop-clock rule for equitable tolling. The majority does not explicitly say that these cases overrule *Socop-Gonzalez*, only that they "undermine" its "continued validity." Maj. Op. at 31 n.8. And the majority is not clear as to whether the rule it extracts from these cases controls only in "future *AEDPA* equitable tolling decisions," or whether it sweeps more broadly. Maj. Op. at 21 (emphasis added). Either way, *Pace* and *Holland* are perfectly compatible with *Socop-Gonzalez*, and with a key Supreme Court case post-dating *Pace* and *Holland*—*Artis v. District of Columbia*, 138 S. Ct. 594 (2018)—which the majority seeks to sweep aside.

In establishing the stop-clock standard, *Socop-Gonzalez* relied principally on *Burnett v. New York Central Railroad Company*, 380 U.S. 424 (1965), and *American Pipe & Construction Company v. Utah,* 414 U.S. 538 (1974). In *Burnett*, the plaintiff timely filed a Federal Employers' Liability Act claim in state court; the claim was dismissed for improper venue. The plaintiff refiled in federal court eight days later, but the three-year statute of limitations had by then expired. 380 U.S. at 424–25. The Supreme Court held that the limitations period "was tolled during the pendency of the state action," and that the plaintiff could have taken the full time remaining under the tolled statute when the state court dismissal became final—the limitations period minus the time the state court suit was pending—to refile. *Id.* at 434–35.

*American Pipe* rested on a similar understanding of tolling. 414 U.S. at 541, 561. The Court there held that the institution of a class action suspends the running of the limitations period for individual class members' claims until

the suit is stripped of its class-action character. *Id.* at 561. Subtracting the tolled period from the time since the original statute of limitations had been running, the Court concluded that individual class members had eleven days remaining within which to file at the time that the tolled period ended: "The class suit brought by Utah was filed with 11 days yet to run in the [limitations] period . . . , and the intervenors thus had 11 days after the entry of the order denying them participation in the suit as class members in which to move for permission to intervene." *Id.* Because the plaintiffs filed within eight days of the class action order, their individual claims were not time-barred—that is, they could have taken the full eleven days they had to file, regardless of any judge's subjective views as to whether they really needed all eleven days. *See id.*

The majority recognizes that *Burnett* "would seem to direct [the] stop-clock approach" of *Socop-Gonzalez.* Maj. Op. at 25–26. (*American Pipe* is barely discussed. Maj. Op. at 26.) But, the majority asserts, "subsequent developments"—namely, *Pace* and *Holland*—have silently abrogated *Burnett*. *Id.*

Equitable tolling's diligence requirement was not elaborated upon in the Court's opinion in *Burnett*; given the speed with which the plaintiff refiled, diligence was not a live issue. The fact that diligence was not at issue in *Burnett* is no reason to assume that the diligence requirement is in any tension with the stop-clock principle. In fact, *Socop-Gonzalez* recognized and applied the Ninth Circuit's longstanding diligence requirement. "The question is whether, despite due diligence, Socop was prevented during this period [the period for which equitable tolling is sought] by circumstances beyond his control and going beyond 'excusable neglect,' from discovering that his order of

deportation had become effective—the vital information he needed in order to determine that a motion to reopen was required in order to preserve his status." 272 F.3d at 1194; *see also id.* at 1185 ("[a]ll one need show is that by the exercise of reasonable diligence the proponent of tolling could not have discovered essential information bearing on the claim" (quoting *In re Gardenshire*, 220 B.R. 376, 382 (B.A.P. 9th Cir. 1998))); *Miles*, 187 F.3d at 1107; *Valverde*, 224 F.3d at 134. The question, then, is whether and how *Pace* and *Holland* disturbed this settled understanding of the dual roles of diligence and the stop-clock calculation—especially when, as I shall show, a recent Supreme Court case reiterated the stop-clock understanding of equitable tolling.

*Pace* arose in a distinctive context. Pace's state conviction became final four years before AEDPA's one-year statute of limitations was enacted, at a time when courts applied a laches analysis to the timeliness of federal habeas petitions because there was no limitations statute. 544 U.S. at 410–11; *see also Gratzer v. Mahoney*, 397 F.3d 686, 690 (9th Cir. 2005) ("In pre-AEDPA practice, the equitable doctrine of laches as applicable to habeas petitions was codified in Rule 9(a) of the Rules Governing Section 2254 Cases."). Indeed, before AEDPA, some states had no, or had only recently passed, deadlines for filing state post-conviction petitions. *Grant v. Swarthout*, 862 F.3d 914, 922 (9th Cir. 2017). Thus, petitioners sometimes waited years before filing state post-conviction petitions, leaving federal habeas courts to determine "whether petitioners had sat on their claims for years before seeking relief and then asserted that they were further entitled to equitable tolling." *Id.* With AEDPA's passage, all prisoners to whom AEDPA applied and who had not yet filed petitions were given 365 days within which to file one. Pace missed that deadline and

sought statutory and, as a backup, equitable tolling. 544 U.S. at 410, 417–18.

The Court rejected Pace's principal, statutory tolling argument. *Id.* at 417. In a brief discussion denying equitable tolling, the Court stressed that Pace "waited *years*, without any valid justification" to file his petition in Pennsylvania. *Id.* at 419 (emphasis added). Had he "advanced his claims within a reasonable time of their availability," the Court stated, Pace would not have "fac[ed] any time problem, state or federal." *Id.* It also noted (but seemingly placed no weight upon) the fact that, after the rejection of his state court petition became final, Pace waited five more months to file in federal court. *Id.* The Court gave no indication that, if Pace had filed five months earlier, it would have been any more inclined to grant equitable relief, given the years-long prior delay. Indeed, the passage of AEDPA gifted Pace a year he would not otherwise have had within which to file. Essentially, the Court held that laches already barred Pace's claim when AEDPA was enacted, so he was entitled to no additional consideration after he was accorded an additional year. *Id.* at 419 (citing *McQuiddy v. Ware*, 20 Wall. 14, 19 (1874) ("Equity always refuses to interfere where there has been *gross laches* in the prosecution of rights) (emphasis added)). In light of the transition worked by AEDPA—from a regime in which courts assessed filing delays in the absence of any statute of limitations to one in which they defer to a congressional determination of the time it should take to file—*Pace*'s distinct factual context is unlikely to recur. *See Grant*, 862 F.3d at 922 ("*Pace* was a case in which the Court denied equitable tolling based on the petitioner's failure to pursue state postcollateral relief for four years after his direct appeal was concluded. . . . *Pace* was the product of a problem common before the passage of AEDPA.")

The Court also emphasized that Pace's pre-AEDPA multiple-year delay lacked "any valid justification," because the facts underlying the claims in his habeas petition were available by 1991, long before his eventual filing. *Id.* at 418–19. Pace was not denied equitable tolling on the basis of his delay alone; it was the availability, even before the limitations period began, of the facts he needed to file, *together with* the five years that lapsed before AEDPA's passage, that precluded a finding that the asserted extraordinary circumstance during the additional year the new limitations period provided actually prevented timely filing. *Id.*

Given this history, *Pace* is best understood as an application of pre-AEDPA principles in the context of a prisoner whose conviction became final well before AEDPA. Otherwise, Pace's lack of diligence before AEDPA's statute of limitations began to run would have had no bearing on whether he was entitled to equitable tolling under the statute thereafter. *Pace* thus offers no support for the rule that the majority ultimately endorses: that a post-extraordinary-circumstance delay *alone* can be seized upon to deny relief for an otherwise diligent petitioner. Although *Pace* reaffirmed that equitable tolling requires diligence, it does not suggest that the diligence requirement displaces, rather than operates in conjunction with, the stop-clock approach to determining the amount of time available to the plaintiff or petitioner.[9]

---

[9] The majority asserts that if the stop-clock approach had been applied to the facts of *Pace*, the outcome would have been different. Maj. Op. at 21 n.4. Not so. Again, under the stop-clock approach, diligence *is* a separate inquiry and can independently bar the application of equitable tolling, obviating the need to apply the stop-clock calculation—which is

The majority next relies on *Holland*, which it asserts "took an additional step that weighs against" retaining *Socop-Gonzalez* by adding "an explicit causation requirement to the rule for equitable tolling." Maj. Op. at 23. But this Court had already recognized a causation requirement for equitable tolling before *Socop-Gonzalez*, and it has focused its diligence analysis on precisely that requirement. *See Miles*, 187 F.3d at 1107; *Valverde*, 224 F.3d at 134. Moreover, to the extent the *Holland* Court modified *Pace* at all, it modified only the extraordinary-circumstance element of equitable tolling—not the diligence element—by adding four words ("and prevented timely filing") to the requirement that "some extraordinary circumstance stood in [the petitioner's] way." 560 U.S. at 649 ("[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing.") (quoting *Pace*, 544 U.S. at 418).[10]  The case does nothing to heighten the diligence requirement, nor does it invite judicial second-guessing of congressional determinations of the time ordinarily needed to file.

---

what happened in *Pace*. *See* pp. 52–53 (discussing the diligence prong as applied in *Socop-Gonzalez*).

[10] The majority makes much of the *Pace* and *Holland* Courts' phrasing of the diligence requirement as requiring that the petitioner demonstrate "that he '*has been pursuing* his rights diligently'—not that he 'pursued,' 'had pursued,' or 'has pursued' his rights diligently." Maj. Op. at 20 n.3. But as the majority itself recognizes in a separate footnote, the Supreme Court elsewhere has more recently phrased the diligence requirement to require only that the petitioner "has pursued his rights diligently." Maj. Op. at 29 n.7 (quoting *CTS Corp. v. Waldburger*, 573 U.S. 1, 9 (2014)).

The majority also suggests that *Holland* further undermined *Socop-Gonzalez* by remarking on a petitioner's diligence after the extraordinary circumstance had dissipated. But as the majority acknowledges, this remark had no effect on the outcome of the case. Maj. Op. at 24 n.5. So, like *Pace*, *Holland* does not stand for the proposition that a delay in filing after an extraordinary circumstance has abated, standing alone, can justify denying a petitioner equitable relief. Rather, *Pace* and *Holland* made explicit what the Ninth Circuit had already recognized about equitable tolling's diligence requirement, *see Miles*, 187 F.3d at 1107; *Valverde*, 224 F.3d at 134; *Spitsyn*, 345 F.3d at 802; *Roy*, 465 F.3d at 973; *Doe*, 661 F.3d at 1012–13, and did not discuss—much less disapprove— the well-established stop-clock principle. Much more would be needed to conclude—as does the majority—that *Pace* and *Holland* silently abrogated *Burnett* and *American Pipe*.

Were there any doubt that the stop-clock approach to equitable tolling survived *Pace* and *Holland*, the Supreme Court eliminated it in *Artis v. District of Columbia*, 138 S. Ct. 594 (2018). *Artis* discussed at length the meaning of "tolling" in the limitations period context generally and in the equitable tolling context in particular, explaining that the stop-clock approach applies in both contexts. *Id.* at 601–02.

The equitable tolling discussion in *Artis* was an integral part of a larger discussion of the legal meaning of "tolling" in the context of statutory time prescriptions generally. The Court in *Artis* adopted a stop-clock interpretation of the word "tolled" within the meaning of 28 U.S.C. § 1367(d) on the understanding that "'tolled' in the context of a time prescription . . . means that the limitations is suspended (stops running) . . . then starts running again when the tolling period ends, picking up where it left off." *Id.* at 601. *Artis*

confirmed that understanding by quoting Black's Law Dictionary 1488 (6th ed. 1990) for the proposition that "'toll,' when paired with the grammatical object 'statute of limitations,' means "to suspend or stop temporarily," 138 S. Ct. at 601, and also by quoting *American Pipe* for the proposition that "a 'tolling' prescription . . . 'suspend[s] the applicable statute of limitations," *id.* at 602 (quoting 414 U.S. at 554). The Court then turned to its understanding of equitable tolling as further indication of the stop clock meaning of "tolling":

> We have similarly comprehended what tolling means in decisions on equitable tolling. See, e.g., CTS Corp. v. Waldburger, 573 U.S. —, —, 134 S.Ct. 2175, 2183, 189 L.Ed.2d 62 (2014) (describing equitable tolling as "a doctrine that pauses the running of, or 'tolls' a statute of limitations" (some internal quotation marks omitted)); United States v. Ibarra, 502 U.S. 1, 4, n. 2, 112 S.Ct. 4, 116 L.Ed.2d 1 (1991) (per curiam) ("Principles of equitable tolling usually dictate that when a time bar has been suspended and then begins to run again upon a later event, the time remaining on the clock is calculated by subtracting from the full limitations period whatever time ran before the clock was stopped.").

*Id.* at 602.

The majority emphasizes that *Artis* and some of the cases upon which it relied did not directly involve equitable tolling; instead, the issue in *Artis* was what a statute meant by "toll." Maj. Op. at 27–29. But it would have been

puzzling for the Court to describe the stop-clock rule of equitable tolling exactly as it was framed in *Socop-Gonzalez* if *Pace* and *Holland* had genuinely wrought the revolution in the jurisprudence of equitable tolling imagined by the majority.

Moreover, where a precedent "confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, regardless of whether doing so is necessary in some strict logical sense." *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1186 (9th Cir. 2003) (quoting *United States v. Johnson*, 256 F.3d 895, 914 (9th Cir. 2001)). And, in any event, "[w]e do not treat considered dicta from the Supreme Court lightly." *McCalla v. MacCabees Life Ins. Co.*, 369 F.3d 1128, 1132 (9th Cir. 2004) (quoting *United States v. Montero-Camargo*, 208 F.3d 1122, 1132 n.17 (9th Cir. 2000) (en banc)). Here, the Supreme Court invoked its stop-clock understanding of equitable tolling as an integral part of its reasoning for adopting its stop-clock interpretation of the statute at issue. *Artis* thus made clear that *Pace* and *Holland* did not silently overrule *Burnett* and *American Pipe* and thereby undermine *Socop-Gonzalez*.

## IV. Administrability and Uniformity

The majority does not engage at all with the third consideration underlying *Socop-Gonzalez*: that the approach the majority today adopts is "needlessly difficult to administer," and promotes "inconsistency" and "uncertainty." 272 F.3d at 1195; *see also* Maj. Op. at 31 n.8. But, if more were needed, that consideration remains a powerful reason to retain *Socop-Gonzalez*'s stop-clock approach to equitable tolling.

Given its "chancellor's foot" approach to deciding the total filing period available to a petitioner when the other equitable tolling requisites are met, the Court's opinion today provides no guidance to district courts or three-judge panels for determining, retrospectively, the filing period required in the various circumstances in which equitable tolling can be invoked. This case is one in which the extraordinary circumstance impeded filing during the first part of the statutory limitations period. But that is not always the case. Extraordinary circumstances are often extraordinary precisely because they arise at an unexpected time and involve widely varying circumstances.   By committing this Circuit to the business of deciding how long one should take to prepare and file a federal claim, the majority requires judges to decide whether claimants should receive more, less, or the same amount of time to file depending on what the extraordinary circumstance is and whether it arises sooner or later during the running of the limitations period.

To illustrate: Suppose that a six-month coma befalls one petitioner exactly at the moment that an applicable one-year limitations period would ordinarily begin to run. And suppose that a second petitioner succumbs to an indistinguishable six-month coma with exactly six months remaining on the applicable limitations clock. Both petitioners file exactly 366 days after the applicable limitations period would ordinarily have begun—that is, both petitioners took six conscious months plus an additional conscious day to prepare their respective filings. Must the second petitioner exhibit more, less, or the same level diligence as the first to prove worthy of equitable tolling?

Under the stop-clock rule, of course, equitable tolling would provide the full period Congress determined should

be available, 365 days, so each petitioner would receive six months of tolling and both filings would be timely. But without such a rule, courts are left free to decide, on a case-specific basis, whether six months and a day was too long a period within which to file for the first petitioner but not the second (perhaps on the ground that, once the first petitioner awoke, he had an uninterrupted preparation period, while the second petitioner could not have foreseen the barrier to filing), or vice versa (perhaps because the second petitioner could have been working diligently all along and, if she did, could have finished before disaster struck). Suppose, further, that a third unfortunate petitioner survives a 365-day coma which began on the day that his limitations period started. Could six conscious months (plus a day) be deemed too long a period within which to prepare and file a claim in his case, even though Congress provided a 365-day limitations period?

Consider, too, the dilemmas the majority's approach creates for petitioners. The majority effectively requires petitioners to be prepared, in advance of filing, to demonstrate precisely how they used their time, even if they do not yet know that an extraordinary circumstance that gets in their way may arise. This new requirement is particularly troubling given the majority's assertion—unnecessary to decide this case—that diligence *before* the extraordinary circumstance arises must also be demonstrated. *See, e.g.*, Maj. Op. at 30. Under the majority's approach, a petitioner who fears that an extraordinary circumstance might arise would be well-advised to prepare a journal, demonstrating just how diligently they have used each month, day, or hour available, to prevent a judge from seizing upon delay that seems to her excessive as an excuse to deny relief.

Then there is the problem of what the journal must show to reflect diligence: If the petitioner attends classes provided by the prison for three hours when he could be working on his petition, is he insufficiently diligent? If a non-prisoner plaintiff takes a week-long vacation with his family when he could be working on his complaint, is he insufficiently diligent? Should the petitioner's reading level or minor illnesses affect the determination of how long he should have taken to file once the extraordinary circumstance abated?

Any answers to these questions will be unpredictable and come after the fact. As a result, a petitioner will have the incentive "to rush to court without fully considering his or her claim—a policy that serves none of the parties involved." *Socop-Gonzalez*, 272 F.3d at 1196. *Socop-Gonzalez* was correct to regard the ease of administration of the stop-clock rule as an additional reason for affirming it. I would do so again today.

## *V. Equitable Tolling as Applied*

The strength of *Socop-Gonzalez*'s administrability consideration is well demonstrated by the majority's application of its approach to the facts of this case.

It is undisputed that Smith's lawyer wrongfully withheld Smith's appellate record, despite Smith's diligent efforts in seeking it, for 66 days. Smith filed his federal habeas petition 65 days after the statute of limitations would ordinarily have expired. He requests equitable tolling for the 66 days for which his record was wrongfully withheld. Applying the stop-cock rule (and assuming, again, that the withholding of the record was an extraordinary circumstance), Smith filed his petition with a day to spare.

It is unclear on the present record how Smith used the 364 days it took him to prepare and file his petition. Although his legal arguments on federal habeas are largely the same as those asserted in his state court appellate briefs, he deleted one claim. Why, and whether his decision to do so depended on his review of the case files, the record does not disclose. Also, Smith's federal habeas petition contained 20 pages of factual background copied, with a number of alterations, from a brief he submitted on direct appeal. The record does not tell us whether the fact section he revised was included in the records he received.

This factual ambiguity illustrates why this Court has long tethered equitable tolling's diligence inquiry to its causation requirement. Suppose, for example, that, after receiving the records wrongfully withheld, Smith never opened the box containing them. If that were so, it could not be said that the 66-day delay in receiving those records prevented his timely filing, as he evidently did not need those records to prepare his petition. To put it another way: for a petitioner who would make no use of his record, the unavailability of that record is not an extraordinary circumstance that prevents timely filing.

But suppose, instead, that Smith did review the wrongfully withheld records to determine whether his petition might be strengthened by them. That effort could take considerable time. As the Seventh Circuit has recognized in a similar context,

> [S]ometimes it takes a longer time to review the possibilities, discard the least promising, and write a concise pleading than it would to write a kitchen-sink petition. Perhaps a review of his entire record indicated to [petitioner] that he was best served by

>repeating claims made by a member of the
>bar, instead of trying to craft legal arguments
>from scratch. He could not have known until
>he had the chance to review his file.

*Socha v. Boughton*, 763 F.3d 674, 688 (7th Cir. 2014).
Exactly how much time should be allowed for that reviewing
process and for the preparation of a habeas petition based on
it? Congress has been clear: a petitioner is permitted to take
up to 365 days to prepare and file a federal habeas petition.
Again, "[a] year is a year is a year." *Lott*, 304 F.3d at 927
(McKeown, J., concurring).

The difference between these two scenarios explains
why, even if Smith's federal habeas petition had been a
verbatim copy of what he submitted for state habeas review,
the 364-day delay between his receipt of the records and his
filing, *standing alone*, cannot support the denial of relief. In
the first scenario, Smith's lack of diligence once he received
his record would have illustrated that the absence of his
records did not affect his ability to meet the statutory
deadline, so his lack of diligence would preclude equitable
tolling. But in the second scenario, in which Smith did need
and use his case files, his overall diligence should be
measured against the 365-day period provided by Congress.
Under these circumstances, the causal link would be
unbroken: had Smith's attorney not prevented him from
beginning his reviewing process sooner, he would have had
the full statutory period in which to prepare a timely filing.

The majority does not and cannot say which of these two
scenarios more accurately reflects Smith's drafting process.
Previously, when we have been unsure about the relationship
between the asserted extraordinary circumstance and the
impact of the plaintiff's diligence, or lack thereof, on his

ability to use the time ordinarily available under the limitations deadline, we have remanded for the fact-finding necessary to resolve that uncertainty. *Spitsyn*, 345 F.3d at 802. This the majority refuses to do. On the one hand, the majority instructs courts to be "fact-specific"; on the other, the majority's reasoning provides no guidance as to which sorts of facts—say, variations in petitioners' reading levels, in the scheduling demands of their wardens, or in the quality of their prison libraries—might have made a difference for Smith. *Compare* Maj. Op. at 11–15 *with* Maj. Op. at 33–36. So, the majority's ruling is really that 364 days is *always* too long a period within which to prepare a federal habeas petition, whatever the petitioner was doing for those days— even though Congress provided a 365-day limitations period. From whence that judicially decreed benchmark came we are not told.[11]

The majority rejects this characterization of its holding, insisting that it has "no trouble imagining" cases in which taking 364 days to prepare and file a habeas petition after an extraordinary circumstance abates does not disqualify a petitioner from receiving equitable tolling. Maj. Op. 35. But it makes no effort to distinguish its imaginings from the case at hand, saying only that petitioners must work on their petitions "with some regularity." Maj. Op. at 35. We are left to wonder what sort of regularity must be demonstrated—

---

[11] This indifference to the factual record—or in this case, to the silence of the record as to the pertinent considerations—creates, I note, a split with the Sixth and Seventh Circuits, which have both recognized that "the mere passage of time—even a lot of time—. . . does not necessarily mean [a claimant] was not diligent." *Gordillo v. Holder*, 640 F.3d 700, 705 (6th Cir. 2011); *see also Pervaiz v. Gonzalez*, 405 F.3d 488, 490 (7th Cir. 2005) ("[T]he test for equitable tolling . . . is not the length of the delay.").

that is, what the journal Smith is retroactively expected to have prepared must show. *See* p.62, *supra*.

### *Conclusion*

Under the new regime, plaintiffs and petitioners who file their habeas petitions free from any extraordinary impediments will enjoy the full 365 days that Congress provided within which to complete and file their initial pleadings. But if an extraordinary circumstance—say, grave illness, *see, e.g.*, *Arbas v. Nicholson*, 403 F.3d 1379, 1381 (Fed. Cir. 2005), serious attorney misconduct, *Holland*, 560 U.S. at 652, or misinformation from a court or government office, *Socop-Gonzalez*, 272 F.3d at 1184–85— precludes a potential litigant from drafting or filing his lawsuit during part or all of the limitation period, the ground shifts. Now, the litigant has only the number of days for drafting and filing deemed adequate after the fact by the judge or judges who happen to be assigned to his case. We decided otherwise in *Socop-Gonzalez*, and *Artis* reaffirmed the stop-clock approach to equitable tolling there adopted. Neither the majority's extravagant view of judicial discretion in equity nor its misreading of Supreme Court precedent can justify abandoning that approach.

I therefore respectfully dissent. I would remand for the district court to apply the correct, stop-clock standard, after deciding (rather than assuming, as both the majority and I have done) whether Smith did in fact face an extraordinary circumstance and met the diligence standard as it relates to that circumstance.